STATE OF MINNESOTA

IN SUPREME COURT

A14-0213

Original Jurisdiction

Per Curiam
Took no part, Hudson, J.

In re Petition for Disciplinary Action against
Christopher Robert Walsh, a Minnesota Attorney,
Registration No. 199813.

Filed: December 23, 2015
Office of Appellate Courts

_____

Martin A. Cole, Director, Timothy M. Burke, Senior Assistant Director, Office of Lawyers Professional Responsibility, Saint Paul, Minnesota, for petitioner.

John G. Westrick, Saint Paul, Minnesota, for respondent.
_____

S Y L L A B U S

An indefinite suspension with no right to petition for reinstatement for 6 months is the appropriate sanction for an attorney who engaged in dilatory behavior; failed to communicate with clients; acted in bad faith; made a false statement to opposing counsel; and chronically violated court orders and court rules, resulting in lost claims.

O P I N I O N

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility (the Director) filed a petition for disciplinary action against respondent Christopher Robert Walsh, alleging, among other things, that Walsh engaged in dilatory behavior; failed to communicate with clients; acted in bad faith; made a false statement to opposing counsel;

1

and chronically violated court orders and court rules, resulting in lost claims. The referee concluded that Walsh's conduct violated the Minnesota Rules of Professional Conduct, found several aggravating factors, and recommended that Walsh be suspended from the practice of law for a minimum of 1 year. We conclude that Walsh committed professional misconduct that warrants an indefinite suspension with no right to petition for reinstatement for 6 months.

I.

Walsh began practicing law in Minnesota in 1989. He has not been previously subject to professional discipline. Walsh's law practice includes litigation of employment discrimination, personal injury, and wrongful death claims.

The petition for disciplinary action alleged five counts of misconduct, each concerning a different client matter. Walsh admitted before the referee that he committed the misconduct alleged in counts one through four. After an evidentiary hearing, the referee made the following findings and conclusions.[1]

*Count 1—M.I. Matter*

Beginning in 2006, Walsh represented relatives of M.I. in a wrongful death claim. M.I. was arrested by U.S. Immigration and Customs Enforcement and died while in custody at the Ramsey County Adult Detention Center. Walsh failed to timely file and

---

[1] Walsh admitted violating Minn. R. Prof. Conduct 1.1, 1.3, 1.4, 3.1, 3.2, 3.4(c), 3.4(d), and 8.4(d) as they related to the first four counts of the petition for disciplinary action. The referee accepted Walsh's admissions and concluded that Walsh violated Minn. R. Prof. Conduct 1.3, 3.2, 3.3(a)(1), 3.4(c), 4.1, 8.4(c), and 8.4(d) with regard to count five of the petition.

2

serve both the administrative tort notice and the summons and complaint required under federal law. By doing so, Walsh allowed two separate statute of limitations provisions affecting the same cause of action for the same client to expire. Also, Walsh did not timely serve affidavits of expert review and expert identification, which were required because the complaint he drafted alleged medical malpractice. Additionally, Walsh included frivolous claims in the complaint by bringing claims against defendants who were not capable of being sued. Walsh engaged in other dilatory conduct in violation of court rules during the litigation.[2] Ultimately, the claims in this action were dismissed because of Walsh's untimely filings and dilatory conduct.

*Count 2—R.B. Matter*

Walsh represented R.B. and five other people in an action he filed against the City of Minneapolis and others in federal district court in 2010. Walsh repeatedly failed to comply with deadlines in the court's scheduling order. Nearly four months after the deadline, Walsh provided the disclosures required by Fed. R. Civ. P. 26(a). About two months after the deadline for expert disclosures, although he provided the names of his experts, he failed to provide any expert reports. Walsh's answers to interrogatories were made months after the due date, and they contained answers from only two of his six clients. Walsh never provided interrogatory answers on behalf of the other four clients.

---

[2] Walsh failed to file pleadings and other documents in a timely fashion in response to a motion for summary judgment, even after being granted additional time by the federal district court. Walsh also filed an objection to an order by the court that exceeded the word-count limitation. In addition, he failed to redact personal identifying information, such as social security numbers, names of minors, and dates of birth, in deposition transcripts he filed with the federal district court.

Walsh began conducting discovery 17 months after he commenced the action and 33 days before discovery closed.

Opposing counsel filed motions to compel and exclude expert testimony, and Walsh filed motions to extend discovery and impose sanctions for opposing counsel's alleged failure to identify experts. Walsh filed a memorandum in support of his clients' motions and a memorandum in opposition to the defense motion 14 days and 7 days, respectively, after they were due. The district court refused to consider the memoranda because they were untimely filed. The court also excluded plaintiffs' expert witnesses because Walsh failed to timely identify them. Walsh objected to the order. His objection, however, exceeded the word limit, and he sought relief regarding issues that were not addressed in the order.

On July 15, 2012, opposing counsel served and filed a motion for summary judgment. Once again, Walsh's response was late. It also included incomplete sentences, blank citations to the record, and citations to inapposite portions of the record.

*Count 3—C.D. Matter*

Walsh represented C.D. in a personal injury matter, and in October 2006, the insurance carrier involved stopped paying no-fault benefits to C.D. Walsh notified C.D. in December 2006 that his benefits had been terminated. Walsh did not send a demand letter to the insurance carrier until nearly 5 years later. Between February 2008 and January 2009, Walsh failed to perform any substantial work on C.D.'s case. Between September 2011 and February 2012, Walsh failed to communicate with C.D. even though the insurance carrier made a settlement offer in November 2011.

4

Ultimately, the claims in this action were dismissed because, although Walsh filed an action against the insurance carrier in March 2012, he failed to comply with the applicable filing requirements, depriving the district court of jurisdiction to consider the matter. By August 2012 the statute of limitations had expired, and C.D.'s claims were permanently barred. Walsh initially told C.D. that the insurance carrier had filed a motion asserting that Walsh had filed the claim too late but that "it was just legal stuff and not a big deal." Eleven days after the case was dismissed, Walsh told C.D. that the court dismissed the case because Walsh untimely filed it.

*Count 4—G.H. Matter*

Walsh commenced an employment discrimination lawsuit on behalf of G.H. by filing a complaint that was copied from an unrelated matter and contained irrelevant claims. Walsh responded to a motion to dismiss 20 days after the deadline, and as a result, the district court refused to consider it. Walsh filed an amended complaint 4 months after filing the original complaint and failed to include the redline edits required by court rules. Ultimately, the district court dismissed the claims because Walsh "repeatedly failed to comply with the rules" and "unduly delayed and acted in bad faith in moving to amend his complaint."

*Count 5—K.B. Matter*

Walsh represented K.B. in an employment discrimination suit, alleging that the employer had wrongfully terminated K.B.'s employment. The original complaint contained allegations that were copied from a separate complaint involving a different plaintiff against a different employer. The original complaint also indicated that an

5

"Exhibit A" was incorporated by reference; however, no "Exhibit A" was attached. Additionally, Walsh filed the complaint with inconsistent statements of K.B.'s age, multiple spelling and grammatical errors, and incomplete sentences.

Soon thereafter, a first amended complaint was delivered to opposing counsel by facsimile, and it also contained assertions that K.B.'s employment had been terminated, incomplete sentences, blank spaces, and references to a non-existent "Exhibit A." Walsh later hand delivered a second amended complaint to opposing counsel. That complaint still claimed that K.B.'s employment had been terminated, contained incomplete sentences, and referenced a non-existent "Exhibit A."

Opposing counsel filed a motion to dismiss in response to Walsh's second amended complaint. Walsh's response was due 9 days before the hearing. Walsh waited until 2 days before the hearing to file the second amended complaint along with a letter to the district court requesting a continuance of the hearing and an extension of time to respond to the motion to dismiss. The court granted Walsh 9 days to submit a letter addressing K.B.'s claims that was "not a word over five pages." Walsh submitted a 6-page letter with 45 pages of exhibits. For reasons unrelated to Walsh's conduct, the court granted the employer's motion to dismiss.

Before this court, Walsh challenges rulings made during the proceedings before the referee. Walsh also challenges the referee's findings and conclusions with respect to the K.B. matter. We address each issue in turn.

II.

We first turn to Walsh's claims regarding the referee's rulings. Walsh contends that the referee erred by rejecting late amendments to his exhibit list. He also argues that the referee erred by refusing to grant his motion to receive his medical records on a confidential basis.

In a disciplinary proceeding, "[u]nless this Court otherwise directs," the hearing before the referee "shall be conducted in accordance with the Rules of Civil Procedure applicable to district courts and the referee shall have all the powers of a district court judge." Rule 14(b), Rules on Lawyers Professional Responsibility (RLPR). Walsh's challenges involve the referee's authority to control the schedule for the proceedings, resolve discovery disputes, and make evidentiary rulings. We review these types of rulings for an abuse of discretion. *See In re Dedefo*, 752 N.W.2d 523, 528 (Minn. 2008) (reviewing a referee's evidentiary rulings for an abuse of discretion); *Broehm v. Mayo Clinic Rochester*, 690 N.W.2d 721, 727 (Minn. 2005) (reviewing a district court's decision regarding whether to extend a scheduling-order deadline for an abuse of discretion); *Erickson v. MacArthur*, 414 N.W.2d 406, 407 (Minn. 1987) (reviewing a district court's rulings regarding discovery for an abuse of discretion).

A.

Walsh challenges the referee's decision to prohibit late amendments to his exhibit list. The proposed exhibits detailed communications between the attorney for K.B.'s employer and Walsh, as well as communications between K.B. and other employees. Walsh argues that he was not seeking to add undisclosed information to the exhibit list, but

7

rather was attempting to include information previously disclosed and inadvertently omitted. Walsh argues that because his amendments did not prejudice the Director and were relevant to the K.B. matter, the referee's order denying his request to amend his exhibit list was an abuse of discretion.

In August 2014, after the date for the evidentiary hearing was rescheduled, the referee, at the request of the Director, ordered that both parties refrain from any further exchange of exhibit or witness lists. Walsh did not object to moving forward with the case based on the discovery, exhibits, and witnesses already disclosed. When Walsh subsequently moved to amend his exhibit list, the referee denied the motion after hearing arguments regarding the limited amount of time Walsh's counsel had to compile the list, the prior disclosure of the documents to the Director, the tardiness of Walsh's initial disclosure of the exhibit list, and the order stating that no additional exhibits would be allowed. Based on the record before us, we conclude that the referee did not abuse his discretion by denying Walsh's motion to amend his exhibit list.

### B.

Walsh next challenges the referee's order denying his motion to file documents confidentially. Walsh sought to offer his medical records as mitigating evidence for his conduct. By placing his mental state at issue, Walsh agrees that he waived any privilege had was otherwise entitled to assert. *See* Minn. R. Civ. P. 35.03 (waiving the medical privilege when "a party voluntarily places in controversy [his or her] physical [or] mental . . . condition"). Walsh claims that such a waiver, however, does not preclude confidential

8

acceptance of the medical records by the referee.  Walsh argues that because no prejudice would have resulted, he should have been allowed to offer these documents confidentially.

The referee's ruling on Walsh's motion to designate certain medical records as confidential is related to the referee's simultaneous ruling on the Director's motion in limine to exclude evidence, including exhibits, relating to Walsh's physical or psychological condition because Walsh had not complied with the referee's prior discovery order.[3]  During the hearing before the referee, Walsh admitted that he had not signed any medical releases, as required by the referee's prior discovery order.  The parties also acknowledged that the documents Walsh wanted to designate as confidential would be excluded if the referee granted the Director's motion in limine.  The referee granted the Director's motion in limine and denied Walsh's motion to file the documents confidentially.

The decision to grant the Director's motion in limine to preclude Walsh from offering evidence related to any physical or psychological condition and to deny Walsh's motion to offer medical records confidentially was subject to the referee's discretion.  Given our deference to the referee on matters of this nature, and Walsh's continual dilatory conduct and his failure, at any point, to sign authorizations for the release of medical

---

[3]     In a July 11, 2014 order, the referee required Walsh to deliver complete and accurate answers and responses to the Director's interrogatories and document requests by July 15, 2014.  In response to this discovery, Walsh was required to sign medical releases if, at the hearing, he intended to raise any physical or psychological health condition as a mitigating circumstance.

information, we conclude that the referee did not abuse his discretion by denying Walsh's motion for confidential admission of his medical records.[4]

## III.

We next turn to Walsh's challenge to the referee's findings and conclusions related to the K.B. matter. "The Director bears the burden of proving professional misconduct by clear and convincing evidence." *In re Voss*, 830 N.W.2d 867, 874 (Minn. 2013). When a party orders a transcript of the disciplinary hearing, as Walsh did, the referee's findings of fact and conclusions of law are not conclusive. Rule 14(e), RLPR; *Voss*, 830 N.W.2d at 874. Instead, we "give 'great deference' to the referee's findings and will uphold [them] if they have evidentiary support in the record and are not clearly erroneous." *Voss*, 830 N.W.2d at 874 (quoting *In re Coleman*, 793 N.W.2d 296, 303 (Minn. 2011)). A referee's

---

[4]     Following the decision of the referee to grant the Director's motion in limine and to deny Walsh's motion regarding the confidential admission of his medical records, Walsh's counsel asked that certain documents be made part of the referee's file with a confidential designation as an offer of proof. The Director did not object to this request. The referee indicated that the records could be submitted for that purpose but that they would not be designated as confidential. Because the offer of proof related not only to whether these documents could be used as evidence at the hearing but also whether they should be designated as confidential, the better practice would have been for the referee to have granted Walsh's request. *See* Rule 20(d), RLPR (authorizing the referee to designate documents as confidential). Walsh, however, has not identified any actual prejudice he has suffered from the referee's failure to allow him to make a confidential offer of proof. He also has not suggested that his ability to raise issues before this court was affected by the referee's denial of his request to make a confidential offer of proof. Nor has he identified any prejudice he suffered from the referee's denial of his motion for confidential admission of his medical records. In addition, Walsh has neither identified what specific mitigating factors he was precluded from raising nor explained why the medical records were necessary to establish mitigation. In fact, at the hearing before the referee on these motions, Walsh's counsel stated, "I don't know whether or not" the documents he wanted to offer confidentially "are sufficient to actually establish mitigation per se."

findings are clearly erroneous when we are "left with the definite and firm conviction that a mistake has been made." *In re Strid*, 551 N.W.2d 212, 215 (Minn. 1996) (quoting *Gjovik v. Strope*, 401 N.W.2d 664, 667 (Minn. 1987)). The proper interpretation of the rules of professional conduct is a question of law, which we review de novo; but we review a referee's conclusion that an attorney's conduct violated the rules of professional conduct for clear error. *In re Aitken*, 787 N.W.2d 152, 158 (Minn. 2010).

## A.

We begin with the issue of whether Walsh made false statements to the court regarding K.B.'s "termination" with regard to the complaints he filed in the K.B. matter. Walsh argues that the statements in the K.B. complaints are allegations and cannot be misrepresentations because they are refutable facts. In the alternative, Walsh argues that the statements about K.B.'s termination were true. Walsh argues that the act of eliminating K.B.'s prior position, coupled with the act of offering a severance package, was tantamount to termination. According to Walsh, the offer of a new position with a pay increase was a new job offer that did not negate the claim of termination.

The Director argued, and the referee agreed, that the original complaint wrongfully alleged that the employer terminated K.B.'s employment. The referee specifically found that, "[a]lthough [K.B.]'s specific employment position . . . was eliminated, [K.B.] was placed in another employment position. At the time [Walsh] served the original complaint, and throughout the entirety of the litigation, [K.B.] remained employed . . . . Accordingly the allegation that the [employer] had terminated [K.B.]'s employment was false." The referee also found that the amended complaint and the second amended complaint

11

"continued to falsely state that the [employer] had terminated [K.B.'s] employment." The referee concluded that Walsh had violated Minn. R. Prof. Conduct 3.3(a)(1) by making these false statements to the court.

Rule 3.3(a)(1) prohibits a lawyer from "knowingly . . . mak[ing] a false statement of fact or law to a tribunal." The record does not support a finding that Walsh knowingly made a false statement of fact in the complaints when he stated that K.B.'s employment was terminated. Amid the confusion created by Walsh's poor drafting practices, which we do not condone, the complaints allege, in multiple locations, that K.B. was fired or terminated and simultaneously offered a new position with the same employer. Because Walsh also stated in the complaints that K.B.'s employer offered K.B. new positions after eliminating a position that she had held and that K.B. remained employed by her employer during the period addressed in the complaints, the record does not support the conclusion that Walsh knowingly made false statements in the complaints by stating that K.B. had been terminated. Based on the record before us, the referee's conclusion that Walsh violated Minn. R. Prof. Conduct 3.3(a)(1) by making knowingly false statements in the complaints is clearly erroneous.

B.

Next, we turn to the referee's findings of fact and conclusions that, without the permission of the court or the consent of opposing counsel, as required by the Minnesota Rules of Civil Procedure, Walsh served a second amended complaint and then made false representations about the differences between the complaints. Walsh argues that the referee's findings regarding his service of the second amended complaint are clearly

12

erroneous because the findings are based on the improper conclusion that he served the first amended complaint on opposing counsel before serving the second amended complaint. According to Walsh, even though he attempted to serve two amended complaints, he successfully served only one because the first attempt resulted in an incomplete facsimile transmission.

At the disciplinary hearing, opposing counsel testified that Walsh called him to tell him that there would be an amended complaint served to correct mistakes in the first pleading. Walsh indicated that the corrections would be sent via facsimile. There were issues with the facsimile transmission, his opposing counsel testified, but a complete document was received on March 20, 2013. The next day a second amended complaint, which was different from the one faxed to opposing counsel the day before, was personally delivered to opposing counsel's office.

The referee was not persuaded by Walsh's reading of the Minnesota Rules of Civil Procedure and found that the first amended complaint constituted effective service, despite the division of the document into three installments for facsimile transmission. *See* Minn. R. Civ. P. 5.02(c) (addressing service by facsimile). We agree with the referee's conclusion. Walsh's attempt to hide behind his own claimed negligence in serving the first amended complaint as an excuse for later rule violations is, to say the least, not persuasive. The referee's findings that Walsh served both the first amended complaint and the second amended complaint on opposing counsel are not clearly erroneous.

Walsh also challenges the referee's findings and conclusions that he violated Minn. R. Prof. Conduct. 4.1[5] by telling opposing counsel that there were no differences between the first amended complaint and the second amended complaint. It is undisputed that there were differences between the first and second amended complaints. Walsh, however, denies that he violated Rule 4.1 because he denies telling opposing counsel that there were no substantive differences between the first and second amended complaints. Opposing counsel testified otherwise. The referee had the opportunity to observe the demeanor of the witnesses and decided that opposing counsel was more credible. We defer to a referee's findings on such matters as "credibility, demeanor, and sincerity." *See In re Murrin*, 821 N.W.2d 195, 207 (Minn. 2012) (quotation omitted). Therefore, the referee's findings of fact and conclusions that Walsh violated Rule 4.1 are not clearly erroneous.

## IV.

The remaining issue is the appropriate discipline for Walsh's misconduct. "A referee's recommended discipline carries great weight, but it is our ultimate responsibility to determine what discipline, if any, is appropriate." *In re Michael*, 836 N.W.2d 753, 765 (Minn. 2013) (citing *In re Selmer*, 749 N.W.2d 30, 36 (Minn. 2008)). The purpose of disciplinary sanctions "for professional misconduct is not to punish the attorney but rather to protect the public, to protect the judicial system, and to deter future misconduct by the disciplined attorney as well as by other attorneys." *In re Rebeau*, 787 N.W.2d 168, 173

---

[5]     "In the course of representing a client, a lawyer shall not knowingly make a false statement of fact or law." Minn. R. Prof. Conduct 4.1

(Minn. 2010). "Factors [that] we consider [when] determining the appropriate discipline include[:] the nature of the misconduct, the cumulative weight of the disciplinary violations, the harm to the public, and the harm to the legal profession." *In re Lundeen*, 811 N.W.2d 602, 608 (Minn. 2012). Furthermore, although we look to similar cases for guidance as to the appropriate discipline, we tailor the sanction to the specific facts of each case after considering any aggravating and mitigating circumstances. *Id.*

We have held that the nature of the misconduct Walsh admitted and the referee found in this case constitutes serious misconduct. *See Michael*, 836 N.W.2d at 766 (determining that the lawyer's violations involving dishonesty, frivolous arguments, and failure to obey obligations to a tribunal constituted serious misconduct). Walsh's rule violations occurred in multiple cases from 2006 through 2014. They were not a "single isolated incident," but rather multiple instances of misconduct over several years. *See In re Fairbairn*, 802 N.W.2d 734, 743 (Minn. 2011) (citing *In re Wentzel*, 711 N.W.2d 516, 521 (Minn. 2006)). Walsh's misconduct has undermined public confidence in the legal system and significantly harmed several clients whose claims were dismissed or became time barred as a result of Walsh's misconduct. *See Coleman*, 793 N.W.2d at 308 (determining that "[t]he impact of the harm to the public and the legal profession requires consideration of 'the number of clients harmed [and] the extent of the clients' injuries' " (quoting *In re Randall*, 562 N.W.2d 679, 683 (Minn. 1997))); *see In re Ulanowski*, 800 N.W.2d 785, 801 (Minn. 2011) (determining that the failure to follow court rules undermines public confidence in the legal system). Additionally, the referee found multiple aggravating circumstances, including Walsh's dilatory conduct throughout the

15

disciplinary action, Walsh's continued misconduct in the K.B. matter after the petition for disciplinary action was filed, Walsh's lack of remorse, and his experience as an attorney.

Walsh cites several decisions to support his position that the recommended discipline is unreasonable and that a 90-day suspension should be imposed instead. The Director asks the court to impose the 1-year suspension recommended by the referee. The Director, however, acknowledges that he cannot find any "directly on point Minnesota lawyer discipline case that involved" misconduct comparable to Walsh's and that a 1-year suspension "may be viewed as greater than imposed in the past on a lawyer who has no history of discipline and is being disciplined for neglect of client matters."

The varied and substantial misconduct that Walsh committed over an extended period of time has harmed several clients. In addition, several aggravating factors are present in this case. At the same time, the referee clearly erred in concluding that Walsh made knowingly false statements of fact to a tribunal, in violation of Minn. R. Prof. Conduct 3.3(a)(1). In light of all the facts and circumstances of this case, we conclude that the appropriate discipline is an indefinite suspension with the right to petition for reinstatement after 6 months.

Accordingly, we hereby order that:

1.      Respondent Christopher Robert Walsh is indefinitely suspended from the practice of law, effective 14 days from the date of the filing of this opinion, with no right to petition for reinstatement for 6 months from the effective date of the suspension.

2.      Respondent shall comply with the requirements of Rule 26, RLPR (requiring notice of suspension to clients, opposing counsel, and tribunals).

16

3. Respondent shall pay $900 in costs pursuant to Rule 24, RLPR.

4. Respondent may petition for reinstatement pursuant to Rule 18(a)–(d), RLPR. Reinstatement is conditioned on successful completion of the professional responsibility portion of the state bar examination and satisfaction of continuing legal education requirements, pursuant to Rule 18(e), RLPR.

HUDSON, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.